Submitted on plea of no contest May 4, public reprimand issued May 24, 1983

In re Complaint as to the Conduct of

# ROBERT W. HILL,
## *Accused.*

(OSB No. 81-19, SC 29639)

663 P2d 764

## MEMORANDUM OPINION.

On January 28, 1983, the Oregon State Bar Board of Governors and the accused, Robert W. Hill, entered into a Stipulation for Discipline pursuant to Rule of Procedure 37.1. The relevant portions of the stipulation provide:

"II.

"The Accused, Robert W. Hill, was admitted by the Oregon Supreme Court to the practice of law in Oregon on October 9, 1957, and has been a member of the Oregon State Bar continuously since that time, having his office and place of business in Lane County, Oregon.

"III

"A formal disciplinary complaint (No. 81-19) was filed on April 13, 1982, and served upon the Accused on April 21, 1982. * * *

"IV

"The FIRST CAUSE OF COMPLAINT alleges that the Accused is guilty of violating DR 5-105.

"Prior to July 3, 1978, Westover Construction Co., an Oregon corporation, and Westover Realty, Inc., an Oregon corporation, were clients of the Accused.

"On or about July 3, 1978, Mr. Rawlin Westover, a shareholder in and the chief executive of both corporations, brought Ms. Afra Ingham to the Accused's office to consult with him concerning defense of a case then pending in the Circuit Court for Lane County entitled *Arthur Lindley v. Afra A. Ingham, et al.*

"Plaintiff's contention in that suit was that Ms. Ingham had wrongfully recorded a deed in order to acquire clear record title to certain real property in Springfield, Oregon. At that time, either Mr. Westover personally or the corporation Westover Realty, Inc. (the initial document is ambiguous) was participating in a joint venture with Ms. Ingham to subdivide, to develop, and to sell that same real property. The existence of the suit was an impediment to that development.

"Shortly thereafter, Mr. Westover and Ms. Ingham informed the Accused that the former was lending the latter the sum of $15,000. They requested the Accused to prepare a note and a mortgage of other property owned by Ms. Ingham to memorialize and to secure that loan. They also asked the Accused to rewrite an agreement they had previously signed

concerning their relationship in the real property development.

"The Accused prepared a promissory note and a mortgage.

"The Accused also rewrote the agreement between Westover and Ingham. As rewritten, the agreement clarified that the party contracting with Ms. Ingham was Westover Realty, Inc. and not Rawlin Westover personally.

"The rewritten agreement also amplified other aspects of the transaction. It specifically recited Ms. Ingham's ownership of the real property involved. It disclaimed any guaranty by Westover that approval of the subdivision would be obtained. It added paragraphs dealing with the $15,000 loan and the mortgage to secure it, adding a provision that Ms. Ingham would provide a mortgagee's policy of title insurance for the benefit of Westover. It clarified and set the time periods for Westover's exclusive right to sell developed lots.

"The Accused viewed the entire matter as a joint venture of Westover Realty, Inc. and Ms. Ingham in which both sought his assistance to further their common goal. The Accused did not separately confer with or counsel either of the parties with respect to the terms of the note or the mortgage or the agreement. The Accused did not then and does not now believe that his independent judgment was influenced in any way to the benefit or to the detriment of either party. The Accused understood that all terms of the agreement had been resolved prior to his being consulted by the parties.

"The financial interests of Afra A. Ingham and Westover Realty, Inc. were in conflict. The Accused failed and omitted to disclose to each of the parties the possible effect of his representation of both on the exercise of his independent professional judgment on behalf of each. The aforesaid conduct was and is in violation of DR 5-105(A).[1]

---

[1] DR 5-105 provides in pertinent part:

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of

"V

"The SECOND CAUSE OF COMPLAINT alleges that the Accused is guilty of violating DR 5-105; DR 4-101(B)(2) and DR 4-101(B)(3).

"In July of 1980, Mr. Westover informed the Accused that Ms. Ingham was in default of the provisions of her note. He asked the Accused to foreclose the mortgage. The Accused responded that if Ms. Ingham still retained any interest in the property, it would be necessary for him to refer the matter to another attorney. The Accused had had no information concerning Ms. Ingham's affairs in the intervening two-year period.

"When Mr. Westover obtained a foreclosure report, the Accused reviewed it and learned that Ms. Ingham had secured an $85,000 loan from Citicorp secured by a second mortgage on the real property. Mr. Westover informed the Accused that the total indebtedness secured by his first mortgage and Citicorp's second mortgage substantially exceeded the fair market value of the real property.

"The Accused concluded that even though Ms. Ingham was the record title holder, the practicalities were that the second mortgagee, Citicorp, had taken over the real property, would be paying off the Westover first mortgage, and either had already or would shortly obtain from Ms. Ingham a deed in lieu of foreclosure of its second mortgage. Correspondence from Ms. Ingham to Circuit Court Judge Edwin E. Allen confirms that she had agreed to give such a deed in lieu of foreclosure. However, Ms. Ingham had not yet obtained the necessary legal description to execute it at the time the Accused initiated the foreclosure proceeding. The Accused named Ms. Ingham as a defendant in the foreclosure complaint, based on his understanding that she had no real interest in the property.

"When Ms. Ingham and Citicorp failed to appear in the foreclosure proceeding, the Accused took a decree of foreclosure by default.

"Subsequently, Ms. Ingham wrote Judge Edwin E. Allen complaining of the default, complaining generally of a conflict of interest of the Accused, and complaining particularly about the amount of attorney fees allowed in the default.

"The Accused voluntarily prepared and presented a motion and order to set aside the decree of foreclosure which

---

the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

was duly entered by the court, allowing Ms. Ingham an additional 30 days in which to make an appearance in the case and effecting the withdrawal of the Accused and the substitution of other counsel for the plaintiff. Immediately thereafter, the case was effectively disposed of when the second mortgagee, Citicorp, paid the secured indebtedness to Westover Realty, Inc. and obtained its deed in lieu of foreclosure from Ms. Ingham.

"At the time the foreclosure was initiated, the Accused had no knowledge of the nature and extent of any interest Ms. Ingham may have had in the real property other than that gleaned from the foreclosure title report and from Mr. Westover. The Accused's representation of Ms. Ingham in defense of the *Lindley* suit involved other real property and had been terminated earlier.

"The Accused did not actually use any knowledge or information gathered from his prior representation of Ms. Ingham to her disadvantage in the foreclosure. Neither did he actually use any knowledge or information acquired from Ms. Ingham to the disadvantage of Mr. Westover or either of his corporations. Therefore, the Accused did not violate DR 4-101(B)(2) or DR 4-101(B)(3). However, the aforesaid conduct was and is in violation of DR 5-105(A).[2]

"VI

"The Accused agrees to accept a public reprimand in exchange for the above stipulation of facts, if accepted by the Supreme Court of the State of Oregon.

"VII

"The Accused has no prior record of reprimands, suspension, or disbarment. The Accused enjoys an excellent reputation in Eugene and Lane County, Oregon for his honesty and veracity established-in 25 years of private practice. There have been no prior complaints made to the Oregon State Bar concerning the ethical propriety of the Accused's conduct as an attorney.

"VIII

"The above stipulations and statements have been freely and voluntarily made by the undersigned Accused, Robert W. Hill * * *."

---

[2] *See infra* note 1.

The Disciplinary Review Board reviewed the matter and recommended to this court the acceptance of the Stipulation for Discipline. We find from a review of the record that there is a sufficient basis upon which to accept the stipulation pursuant to Rule of Procedure 37.1.

This opinion shall serve as a public reprimand to Robert W. Hill. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.535(4).